USDC SCAN INDEX SHEET

















CGL   11/29/05   14:22

3:05-CR-02137  USA V. CUNNINGHAM

*1*

*CRINFO.*

FILED

NOV 2 8 2005

CLERK, U.S. DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA
BY                                    DEPUTY

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | Criminal Case No. 05cr2137-LAB |
| Plaintiff, ) | I N F O R M A T I O N |
| v. ) | Title 18, U.S.C., Sec. 371 – Conspiracy to Commit Crimes against the United States; Title 26, U.S.C., Sec. 7201 – Tax Evasion |
| RANDALL HAROLD CUNNINGHAM, ) aka Randy "Duke" Cunningham, ) | |
| Defendant. ) | |

The United States Attorney charges:

**INTRODUCTORY ALLEGATIONS**

1.   At all times material to this Information, defendant RANDALL HAROLD CUNNINGHAM, aka Randy "Duke" Cunningham, was a Member of the United States House of Representatives for Congressional Districts located in San Diego County, within the Southern District of California.

2.   From on or about December 3, 2001, until on or about March 8, 2004, defendant owned a condominium located at 1211 South Eads Street, Arlington, Virginia (the "Arlington Condominium").

1    3.    From  on  or  about  January  20,  1988,  until  on  or  about

2  November 20, 2003, defendant owned a house located at 13832 Mercado

3  Drive, Del Mar, California (the "Del Mar Home").   In or about late

4  November 2003, defendant sold the Del Mar Home to 1523 New Hampshire

5  Ave., LLC, and purchased a house located at 7094 Via del Charro,

6  Rancho Santa Fe, California (the "Rancho Santa Fe Home"), where he

7  resides today.

8    4.    At all times material to this Information, defendant owned

9  and operated Top Gun Enterprises, Inc., a California corporation based

10  in San Diego County, California.   As of the date of this Information,

11  Top Gun Enterprises, Inc.'s office address was the Rancho Santa Fe

12  Home.

13    5.    At all times material to this Information, defendant was the

14  legal owner of the "Kelly C," a 65-foot yacht.

15    6.    At all times material to this Information, "Coconspirator

16  No. 1" was the majority owner of a defense contractor.

17    7.    At all times material to this Information, "Coconspirator

18  No. 2" was the majority owner of a defense contractor.

19    8.    On or about August 30, 2002, Coconspirator No. 2 became the

20  registered owner of a 42-foot yacht that was then named the "Buoy

21  Toy."   From in or about fall 2002, through in or about summer 2005,

22  the boat (officially renamed the "Duke-Stir" on January 21, 2003) was

23  docked in defendant's slip at the Capital Yacht Club, 1000 Water

24  Street, SW, Washington, D.C.

25    9.    At all times material to this Information, Coconspirator

26  No. 2 was the managing member of 1523 New Hampshire Ave., LLC, a

27  Nevada domestic limited liability company.

28

2

1    10.  At all times material to this Information, "Coconspirator

2  No. 3" controlled a financial company located in Rosedale, New York.

3    11.  At all times material to this Information, "Coconspirator

4  No. 4" was the president of a mortgage company located in Greenvale,

5  New York.

6                       **COUNT 1 - CONSPIRACY**

7    12.  The introductory allegations set forth in paragraphs 1

8  through 11 of this Information are hereby realleged as if fully set

9  forth herein.

10    13.  Beginning no later than the year 2000, and continuing

11  through about June 2005, within the Southern District of California

12  and elsewhere, defendant RANDALL HAROLD CUNNINGHAM, aka Randy "Duke"

13  Cunningham, conspired and agreed with Coconspirator No. 1,

14  Coconspirator No. 2, Coconspirator No. 3, Coconspirator No. 4, and

15  others (hereinafter collectively referred as the "Coconspirators") to

16  commit the following offenses against the United States:

17         a.   Bribery of a Public Official, that is, defendant and

18  his Coconspirators conspired and agreed that defendant would directly

19  and indirectly corruptly demand, seek, receive, and accept items of

20  value from his Coconspirators, in return for being influenced in the

21  performance of his official acts, in violation of Title 18, United

22  States Code, Section 201(b)(2)(A);

23         b.   Honest Services Mail Fraud, that is, defendant and his

24  Coconspirators conspired and agreed to devise a material scheme to

25  defraud the United States of its right to defendant's honest services,

26  including its right to his conscientious, loyal, faithful,

27  disinterested, unbiased service, to be performed free of deceit, undue

28  influence, conflict of interest, self-enrichment, self-dealing,

                                 3

1  concealment, bribery, fraud, and corruption, and, in executing said
2  scheme, to cause matters and things to be sent and delivered by the
3  United States Postal Service and private and commercial interstate
4  carriers, in violation of Title 18, United States Code, Sections 1346
5  and 1341;

6      c.    Honest Services Wire Fraud, that is, defendant and his
7  Coconspirators conspired and agreed to devise a material scheme to
8  defraud the United States of its right to defendant's honest services,
9  including   its   right   to   his   conscientious,   loyal,   faithful,
10 disinterested, unbiased service, to be performed free of deceit, undue
11 influence, conflict of interest, self-enrichment, self-dealing,
12 concealment, bribery, fraud, and corruption, and, in executing said
13 scheme, to transmit and cause to be transmitted in interstate commerce
14 by means of wire communications, certain writings, signs, signals and
15 sounds, in violation of Title 18, United States Code, Sections 1346
16 and 1343; and

17     d.    Tax Evasion, that is, defendant and his Coconspirators
18 conspired and agreed to willfully evade and defeat the income tax due
19 and owing to the United States of America by defendant for calendar
20 years 2001 through 2005 by concealing and disguising through various
21 means illicit payments and benefits received by defendant, in
22 violation of Title 26, United States Code, Section 7201.

23              **METHODS AND MEANS OF THE CONSPIRACY**

24     14.   In furtherance of this conspiracy, defendant and his
25 Coconspirators used the following methods and means, among others:

26     a.    Defendant demanded, sought, and received at least
27 $2.4 million in illicit payments and benefits from his Coconspirators
28 in various forms, including cash, checks, meals, travel, lodging,

                                  4

1  furnishings, antiques, rugs, yacht club fees, boat repairs and
2  improvements, moving expenses, cars, and boats;

3          b.   Defendant made recommendations and took other official
4  action in order to influence the United States Congress's
5  appropriations of funds to benefit Coconspirator No. 1 and
6  Coconspirator No. 2, which defendant did, in part, because of his
7  receipt of the above-described payments and benefits, and not because
8  using Coconspirators Nos. 1 and 2 was in the best interest of the
9  country;

10         c.   Defendant used his public office and took other
11 official action to pressure and influence United States Department of
12 Defense personnel to award and execute government contracts in a
13 manner that would benefit Coconspirator No. 1 and Coconspirator No.
14 2, which defendant did, in part, because of his receipt of the above-
15 described payments and benefits, and not because using Coconspirators
16 Nos. 1 and 2 was in the best interest of the country;

17         d.   Defendant used his public office and took other
18 official action in a manner that would benefit Coconspirator No. 3,
19 which defendant did because of his receipt of the above-described
20 payments and benefits;

21         e.   Defendant and his Coconspirators attempted to conceal
22 and disguise this conspiracy through various means, including one-
23 sided transactions through which one or more Coconspirators would buy
24 property from defendant at an above-market price, would pay money to
25 defendant for property that defendant continued to own, and would sell
26 to defendant property at a below-market price.

27         f.   Defendant and his Coconspirators also attempted to
28 conceal and disguise this conspiracy by directing payments through

5

1   multi-layered transactions involving corporate entities and bank
2   accounts that defendant and his Coconspirators owned and controlled,
3   including the following payments:

4            i.   By having Coconspirator No. 1 pay $525,000 to a
5   company controlled by Coconspirator No. 3, in order to pay off a
6   mortgage on the defendant's Rancho Santa Fe Home that had been issued
7   by a company owned by Coconspirator No. 4;

8            ii.  By having Coconspirator No. 2 pay $500,000 to
9   defendant, who caused the money to be deposited into the bank account
10  of a company controlled by Coconspirator No. 3, in order to pay off
11  a mortgage on the defendant's Rancho Santa Fe Home that had been
12  issued by a company owned by Coconspirator No. 4;

13           iii. By having Coconspirator No. 3 pay $200,000 to a
14  company controlled by Coconspirator No. 4, as the down payment for the
15  purchase of the defendant's Arlington condominium; and

16           iv.  By having Coconspirator No. 2 pay defendant
17  $115,100 in the form of a check made payable to Top Gun Enterprises,
18  Inc., in order to offset the capital gains taxes owed by the defendant
19  on the sale of his Del Mar Home.

20           g.   Defendant also attempted to conceal and disguise this
21  conspiracy by intentionally failing to include in his Financial
22  Disclosure Statements to the United States House of Representatives
23  the illicit payments and benefits that he received from his
24  Coconspirators; and

25           h.   Defendant also attempted to conceal and disguise this
26  conspiracy by intentionally failing to include in his United States
27  Individual Income Tax Returns the illicit payments and benefits that
28  he received from his Coconspirators.

6

1

**OVERT ACTS**

2       15.  In furtherance of this conspiracy, and to effect the objects

3  thereof, on or about the dates set forth below, defendant committed

4  and caused to be committed, within the Southern District of

5  California, and elsewhere, the following overt acts:

6            a.  On or about May 1, 2000, Coconspirator No. 1 paid

7  $70,000 (with personal check no. 1039) to defendant, which defendant

8  deposited into his personal bank account at Union Bank of California

9  in San Diego County, California;

10           b.  On or about May 1, 2000, Coconspirator No. 1 paid

11 $30,000 (with personal check no. 1040) to defendant, which defendant

12 deposited into his personal bank account at Congressional Federal

13 Credit Union in Washington, D.C.;

14           c.  Between on or about October 23, 2000 and March 29,

15 2001, Coconspirator No. 1 paid $11,116.50 to CIT Group towards a

16 mortgage held on defendant's yacht, the Kelly C;

17           d.  On or about August 16, 2001, defendant failed to

18 declare as income on his 2000 federal individual Income tax return

19 (Form 1040) over $100,000 in illicit payments and benefits that he

20 received during the 2000 tax year;

21           e.  On or about November 16, 2001, Coconspirator No. 2 paid

22 $12,000 (with corporate check no. 2056) to an antiques store for three

23 nightstands, one leaded glass cabinet, one washstand, one buffet, and

24 four armoires, which were delivered to defendant;

25           f.  On or about December 3, 2001, Coconspirator No. 3 paid

26 $200,000 to a company controlled by Coconspirator No. 4, which wired

27 the money into an escrow account set up to purchase defendant's

28 Arlington condominium;

7

1          g.   On or about December 10, 2001, Coconspirator No. 2 paid
2    $50,000 (with corporate check no. 2027) to a company controlled by
3    Coconspirator No. 4;

4          h.   On or about December 27, 2001, Coconspirator No. 4 paid
5    $50,000 (with corporate check no. 32399) to defendant, which defendant
6    deposited into his personal bank account at Union Bank of California
7    in San Diego County, California;

8          i.   On or about January 24, 2002, Coconspirator No. 2 paid
9    $6,632 (with a corporate American Express credit card) to a furniture
10   store for a leather sofa and a sleigh-style bed, which were delivered
11   to defendant;

12         j.   On or about February 5, 2002, Coconspirator No. 2 paid
13   $7,200 (with corporate check no. 2251) to an antiques store for an
14   antique Louis Phillipe period commode, c. 1850, and a Restoration
15   period commode, 4 drawers, c. 1830, which were delivered to defendant;

16         k.   On or about February 27, 2002, Coconspirator No. 3 paid
17   $10,000 (with corporate check no. 1005) to defendant, which defendant
18   deposited into his personal bank account at Congressional Federal
19   Credit Union in Washington, D.C.;

20         l.   On or about April 6, 2002, Coconspirator No. 2 paid
21   $13,500 (with personal check no. 4609) to defendant for the purchase
22   of a Rolls Royce, which defendant deposited into his personal bank
23   account at Congressional Federal Credit Union in Washington, D.C.;

24         m.   On or about May 4, 2002, Coconspirator No. 2 paid
25   $17,889.96 (with corporate check no. 2448) to an automotive repair
26   shop for work done on defendant's Rolls Royce;

27         n.   On or about August 30, 2002, Coconspirator No. 2 paid
28   $140,000 (with official bank check no 6330014624) to a third-party for

                                    8

the "Duke-Stir," which was moved to defendant's boat slip for his use and enjoyment;

o.   On or about September 10, 2002, defendant failed to declare as income on his 2001 federal individual income tax return (Form 1040) over $250,000 in illicit payments and benefits that he received during the 2001 tax year;

p.   On or about September 18, 2002, Coconspirator No. 3 paid $20,0000 (with corporate check no. 1045) to defendant, which defendant deposited into his personal Congressional Federal Credit Union account in Washington, D.C.;

q.   On or about September 19, 2002, Coconspirator No. 2 paid $16,867.13 (with corporate check no. 2816) to a marine services company for repairs to defendant's yacht, the Kelly C;

r.   On or about October 17, 2002, Coconspirator No. 2 paid $2,000 (with corporate check no. 2906) to the owner of a marine services company for transportation expenses related to defendant's yacht, the Kelly C;

s.   On or about November 7, 2002, Coconspirator No. 2 paid $7,500 (with personal check no. 4781) to defendant for yacht club fees, which defendant deposited into his personal bank account at Bank of America in Virginia;

t.   On or about November 22, 2002, Coconspirator No. 3 paid $40,000 (with corporate check no. 1095) to defendant, which defendant deposited into his personal bank account at Union Bank of California in San Diego County, California;

u.   On or about November 25, 2002, Coconspirator No. 2 paid $1,119.95 (with a corporate American Express credit card) to an automotive repair shop for work done on defendant's Rolls Royce;

9

1        v.    Between on or about December 27, 2002 and May 27, 2005,

2 Coconspirator No. 3 paid $58,674.90 to CIT Group towards a mortgage

3 held on defendant's yacht, the Kelly C;

4        w.    On or about January 13, 2003, Coconspirator No. 2 paid

5 $3,000 (with corporate check no. 3247) to defendant, which defendant

6 deposited into his personal bank account at Union Bank of California

7 in San Diego County, California;

8        x.    On or about January 13, 2003, Coconspirator No. 2 paid

9 $30,000 (with corporate check no. 3248) to defendant, which defendant

10 deposited into his personal bank account at Union Bank of California

11 in San Diego County, California;

12        y.    On or about April 15, 2003, defendant failed to declare

13 as income on his 2002 federal individual income tax return (Form 1040)

14 over $250,000 in illicit payments and benefits that he received during

15 the 2002 tax year;

16        z.    On or about May 8, 2003, defendant caused to be filed

17 with the State of California Department of Motor Vehicles an

18 Application for Title or Registration and a Certificate of Title, both

19 of which had been altered to reflect a sales price of $18,000 for a

20 1999 GMC Suburban, which defendant had purchased from Coconspirator

21 No. 2 for the below-market-price of $10,000;

22        aa.    On or about May 14, 2003, Coconspirator No. 2 paid

23 $8,000 (with corporate check no. 3652) to defendant, which defendant

24 deposited into his personal account at the Congressional Federal

25 Credit Union in Washington, D.C.;

26        bb.    On or about June 20-22, 2003, Coconspirator No. 2 paid

27 $2,731.33 (with corporate checks nos. 3611 and 3909) to a resort for

28 defendant's lodging and meal expenses, a $1,500 "gift certificate"

10

1  (which defendant used to purchase a set of earrings), and $400 for a

2  Greenbrier charm and necklace;

3          cc.  On or about July 28, 2003, Coconspirator No. 2 paid

4  $9,200 (with a corporate check no. 3956) to a manufacturer for two

5  Laser Shot shooting simulators, which were delivered to defendant;

6          dd.  On or about September 14, 2003, Coconspirator No. 2

7  paid $19,025 (with personal check no. 4989) to defendant, which

8  defendant deposited into his personal bank account at Union Bank of

9  California in San Diego County, California;

10         ee.  On or about November 5, 2003, defendant signed a sales

11 agreement for the sale of his Del Mar Home, which reflected an

12 inflated price of $1.5 million and listed Coconspirator No. 2 as the

13 buyer;

14         ff.  On or about November 6, 2003, defendant sought from

15 Coconspirator No. 2 an additional $175,000 for defendant's purchase

16 of the Rancho Santa Fe Home;

17         gg.  On or about November 7, 2003, defendant signed a second

18 sales agreement for the Del Mar Home, which reflected a further

19 inflated price of $1,675,000 and concealed Coconspirator No. 2's

20 participation by removing his name and listing 1523 New Hampshire

21 Ave., LLC as the buyer;

22         hh.  On or about November 18, 2003, defendant received from

23 Coconspirator No. 2 a 1523 New Hampshire Ave., LLC check (no. 1027)

24 in the amount of $18,160.98, and a wire transfer (sequence no.

25 031118003135) in the amount of $1,664,300, which were credited to a

26 Heritage Escrow Company escrow account (no. 21260) for Coconspirator

27 No. 2's purchase of the Del Mar Home;

28

11

ii.   On or about November 25, 2003, defendant caused $1,456,374 (the net proceeds from the sale of his Del Mar Home) to be credited to a Heritage Escrow Company escrow account (no. 21256) that had been set up for defendant's purchase of the Rancho Santa Fe Home;

jj.   On or about December 1, 2003, Coconspirator No. 4 wire transferred loan proceeds of $1,095,000 into the escrow account that had been set up for defendant's purchase of the Rancho Santa Fe Home;

kk.   On or about December 4, 2003, defendant caused $2,372,616.33 to be wired into the bank account of the seller of the Rancho Santa Fe Home;

11.   On or about December 31, 2003, Coconspirator No. 2 paid $115,100 (with corporate check no. 4704 made payable to "Top Gun Enterprises, Inc.") to defendant, which defendant deposited into his personal bank account at Union Bank of California in San Diego County, California;

mm.   On or about February 26, 2004, Coconspirator No. 2 paid $11,393.56 (with a corporate American Express credit card) to a moving company for the shipment of defendant's household furnishings from his Arlington Condominium to his Rancho Santa Fe Home;

nn.   On or about March 8, 2004, Coconspirator No. 2 paid $8,166.25 (with a corporate American Express credit card) to various third parties for defendant's charter jet, hotel and meal expenses;

oo.   On or about April 15, 2004, defendant failed to declare as income on his 2003 federal individual income tax return (Form 1040) over $500,000 in illicit payments and benefits that he received during the 2003 tax year;

pp.   On or about May 13, 2004, Coconspirator No. 1 paid $525,000 (wire reference no. 16594) to a company controlled by

12

Coconspirator No. 3, in order to pay off the second mortgage on defendant's Rancho Santa Fe Home;

qq.  On or about May 25, 2004, Coconspirator No. 2 paid $2,081.30 (with a corporate American Express credit card) to a Washington, D.C., hotel for defendant's daughter's graduation party;

rr.  In or about June 2004, defendant received from Coconspirator No. 2 $6,500 in cash;

ss.  On or about June 17, 2004, Coconspirator No. 2 paid $18,000 (with corporate check no. 5606 made payable to "Top Gun Enterprises, Inc./R. Cunningham") to defendant, which defendant deposited into his personal bank account at Union Bank of California in San Diego County, California;

tt.  On or about August 25, 2004, Coconspirator No. 2 paid $171,000 (with corporate check no. 6019 made payable to "Top Gun Enterprises, Inc. R.H. Cunningham"), which defendant caused to be transacted through a company controlled by Coconspirator No. 3;

uu.  On or about August 25, 2004, Coconspirator No. 2 paid $329,000 (with corporate check no. 6023 made payable to "Top Gun Enterprises, Inc. R.H. Cunningham"), which defendant caused to be transacted through a company controlled by Coconspirator No. 3;

vv.  Between on or about November 29, 2004 and June 15, 2005, Coconspirator No. 3 paid $28,237.20 to Washington Mutual Bank for monthly mortgage payments on defendant's Rancho Santa Fe Home;

ww.  On or about April 15, 2005, defendant failed to declare as income on his 2004 federal individual income tax return (Form 1040) over $1,000,000 in illicit payments and benefits that he received during the 2004 tax year;

13

1        xx.  On or about May 7, 2005, Coconspirator No. 2 paid
2    approximately $15,200 (with corporate check no. 7243) for one Indo
3    Herati, one Karaja, one Indo Keshan, and two Cino Kerman rugs, which
4    were delivered to defendant;

5        yy.  Between on or about November 2001 through May 2005,
6    Coconspirator No. 2 paid more than $50,000 to various antiques stores
7    for additional antiques and furnishings, including silver candelabras,
8    glass vases, antique armoires, Persian-style carpets, and custom oak
9    and leaded glass doors, all of which were delivered to defendant; and

10       zz.  Between on or about January 2000 through Spring 2005,
11   Coconspirators Nos. 1 and 2 paid more than $10,000 to various resorts,
12   hotels, and restaurants for defendant's meals and entertainment
13   expenses.
14   All in violation of Title 18, United States Code, Section 371.

15

16

17

18

19

20

21

22

23

24

25

26

27

28

14

1

**COUNT 2 - TAX EVASION**

2     16.   The allegations set forth in paragraphs 1 through 11 of this

3  Information are hereby realleged as if fully set forth herein.

4     17.   On or about April 15, 2005, within the Southern District of

5  California, defendant RANDALL HAROLD CUNNINGHAM, aka Randy "Duke"

6  Cunningham, a resident of Rancho Santa Fe, California, did willfully

7  evade and defeat his lawful income tax due and owing for the calendar

8  year 2004, by preparing, signing and filing with the Internal Revenue

9  Service under penalty of perjury, a false and fraudulent joint U.S.

10 Individual Income Tax Return (2004 Form 1040), in which he falsely

11 stated that his joint taxable income was $121,079, and that he was due

12 a refund of $8,504, whereas, as he then knew, his joint taxable income

13 was at least $1,215,458, and there was a joint taxable income due and

14 owing of at least $385,077, all in violation of Title 26, United

15 States Code, Section 7201.

16

17 DATED: November 28, 2005

18

19 CAROL C. LAM
   United States Attorney

20 By:

21

22 SANJAY BHANDARI                    PHILLIP L.B. HALPERN
   Assistant United States Attorney   Assistant United States Attorney

23

24 JASON A. FORGE
   Assistant United States Attorney

25

26

27

28

15